COMMONWEALTH *vs.* EDWIN DAVIS.

On the trial of an indictment for having in one's possession in this State a false, forged and counterfeit bill of another State with intent to render it current as true, and to pass and utter it as true, the evidence tended to show a sale of the bill to another person, both knowing it to be counterfeit, with a suggestion from the defendant not to pass it in this state; and the judge instructed the jury that unless the defendant knew and partici-pated in the purchaser's intent to pass the bill as true or to dispose of it in violation of law, or if he was the agent of the purchaser, he could not be convicted; but that if the defendant had the bill with intent to sell it to the purchaser, who purchased it with intent to render it current as true, the defendant knowing such intent and participating in it, and selling the bill for that purpose, the indictment would be supported; and declined to instruct the jury that it would not be supported by proof of a sale or delivery of a coun-terfeit bill to a person knowing the same to be counterfeit. *Held,* that the defendant had no ground of exception.

The question whether certain words have been erased from an indictment is for the court, and leaving it to the jury is ground of exception.

INDICTMENT containing four counts : first, for having in the defendant's possession a false, forged and counterfeit promissory note of the Mercantile Bank in Rhode Island, and uttering and publishing the same as true, with intent to injure and defraud ; second, for having in his possession a false, forged and counter-feit bill, in the similitude of the bills of said Mercantile Bank, with intent to render it current as true ; third, for having in his possession a false, forged and counterfeit note, in the similitude of the bills of said Mercantile Bank, " with intent to pass and utter the same note ~~as true~~ " ; and fourth, for bringing into this

state such a false, forged and counterfeit bill, with intent to render it current as true ; and each count averring the defendant's knowledge that the bill was false, forged and counterfeit.

At the trial in the court of common pleas, before *Aiken*, J., the Commonwealth offered Samuel Hubbard as a witness, who testified that about the time alleged he met the defendant in Pittsfield, and asked him if he had any counterfeit money, and the defendant showed him some bills of the Mercantile Bank in Rhode Island, saying they were counterfeit, and he would let Hubbard have some of them ; that a fortnight afterwards, at the defendant's request, he met him and one Haskell at the railroad station in Pittsfield ; that the defendant then asked Hubbard if he wanted any counterfeit money, and Hubbard said he did, and gave the defendant ten dollars ; the defendant spoke to Haskell, who went away and came back with a roll of paper ; and the defendant unrolled it and gave Hubbard forty dollars, saying : " If you want it you can take it; but you had better not pass any of it in Pittsfield, as I have passed so much of it that I shall take the next train for Albany." There was other evidence tending to corroborate this, and to show that the defendant then resided near Albany.

Upon these facts the counsel for the defendant asked the court to instruct the jury, " that an indictment for having in possession a certain false, forged and counterfeit promissory note or bill, with intent to utter and pass the same as true, or to render the same current as true with intent to defraud, will not be supported by proof of a sale or delivery of counterfeit bills or notes to a person knowing the same to be counterfeit money at the time he takes it; he being informed by the person selling or delivering the money, at the time of such sale or delivery, that the same was counterfeit." But the court declined to give this instruction.

The defendant further requested the judge to instruct the jury, that "unless the defendant knew Hubbard intended to pass said counterfeit money as true, or otherwise dispose of the same in violation of law, and the defendant participated in such intention ; " or " if the defendant acted as the agent of Hubbard

in procuring this money for him, and at his request," the defendant could not be convicted under this indictment. And the court so instructed the jury.

The judge further instructed the jury that the evidence would not support the first count; that the second count would be supported if the jury were satisfied beyond a reasonable doubt that "the defendant had the money in his possession at Pittsfield, with intent to sell it to Hubbard, who purchased it with intent to render the same current as true, the defendant knowing such intent and participating in it, and selling the money for the purpose of enabling Hubbard to render the same current as true; though Hubbard knew it was counterfeit when he purchased it." And so as to the fourth count.

It was contended by the commonwealth that the words " as true " had been erased from the third count, but the defendant contended that they were still in it. And the judge instructed the jury that if the defendant had the money at Pittsfield with intent to sell it as counterfeit money to Hubbard, to enable and assist him to pass the same, he would be guilty, if the words " as true " were not in the indictment. But the judge left it to the jury to say whether the count contained these words, with instructions that if they found the words " as true " had not been erased, then the government must prove the whole allegation before they could convict on this count.

The jury returned a verdict of not guilty on the first, and guilty on the three other counts, and the defendant alleged exceptions.

S. W. Bowerman, for the defendant.

S. H. Phillips, (Attorney General,) for the Commonwealth, in support of the conviction on the second and fourth counts, cited Hopkins v. Commonwealth, 3 Met. 463; St. 1836, c. 4, § 15; Rex v. Holden, Russ. & Ry. 154; and contended that leaving the question of erasure to the jury was no ground for a new trial, because the exceptions did not show that the defendant asked to have it decided by the court, and because the finding of the jury was according to the record, as appearing on inspection.

MERRICK, J.   The jury were advised, in conformity with the request of the defendant, that if, in procuring the bank bills, he acted merely as the agent of Hubbard, or if, upon the sale and delivery of them to him, he was ignorant of the intention of the purchaser to pass them as true, or otherwise to dispose of them in violation of law, he ought not, upon the other evidence in the case, to be found guilty of the offence charged against him in the indictment.   But the court declined to add the further instructions in the terms proposed by the counsel for the defendant, that an indictment against a party for having in his possession a certain false, forged and counterfeit note or bill, with intent to utter and publish the same as true, or to utter and pass, or render the same current as true, would not be supported by a sale and delivery of counterfeit bills or notes to a person who had knowledge of their real character and was truly informed of it by the vendor at the time of the sale.   It is perfectly clear that this request ought not to have been acceded to, for, whether its accuracy as a legal proposition could be maintained or not, there was no reason why any such rule should then have been laid down or prescribed.   No occasion had arisen in the progress of the trial for its application.   It is not shown that the counsel on the part of the government claimed or asked for a verdict of conviction upon any such ground.   On this contingency, it was only after it should have been satisfactorily established that the defendant had in his possession the counterfeit bills, as alleged in the indictment, that it could have become essential to know whether, upon proof of certain other specified facts, it would be legally competent for the jury to deduce from it the inference that he held them with the criminal intent to utter, pass or render them current as true.   And they were accordingly instructed by the court in reference precisely to the question which had then arisen, that the second count would be supported by proof that the defendant, being himself fully apprised that the bills were false and counterfeit, and knowing that it was the purpose of Hubbard, upon obtaining them by purchase, to utter, pass and render them current as true, had them in his possession with intent to

sell them to Hubbard, and did actually sell them to him, to enable him so to dispose of them in violation of law, and did participate with him in carrying that criminal purpose into execution. This was certainly correct and adapted to the question of fact to be determined. After proof that, with full knowledge of their character, he was in possession of bills which were false and spurious, though in the similitude of those which were genuine, it remained to be ascertained whether it was the intention of the defendant to defraud any persons in the community by passing or causing them to be passed as true. This was one of the essential allegations in the indictment; and if this was his object, then he held them with the criminal intent which constitutes one of the material elements of the offence which was charged against him. It makes no difference in what manner the intent was to be executed; whether by his own hand or by an agency which he had himself set in motion. The purpose of his own mind, with respect to giving currency to forged and simulated bills as true, was the same, if the scheme of falsely palming them upon the community was to be executed either immediately by himself, or by a confederate acting in concert with him. Engaged in a common enterprise of an unlawful character, every conspirator is responsible for whatever is done by his associates in pursuance of the general plan which they may have devised for its accomplishment. This is in substance the rule which was laid down as a guide to the jury; but whether the facts to which it was hypothetically applied were satisfactorily proved was left entirely to their determination. There is therefore no force in, or foundation for, the objection urged on behalf of the defendant, that the court assumed without any, or without sufficient, evidence that the intention of Hubbard in obtaining possession of the bills was to pass or render them current as true.

But the proceedings at the trial in reference to the third count were irregular and erroneous. The court should have determined, upon inspection and perusal of the indictment, what were the allegations it contained, and what offence it charged that the defendant had committed. It is a fixed and funda-

mental rule respecting indictments, that the charge must contain a certain description of the crime of which the defendant is accused, and a statement of the facts of which it is constituted. This is essential alike for the security of the defendant and for the successful termination of the prosecution. Otherwise the grand jury might find a bill for one offence, and the accused be put upon his trial, without authority, for another; or if there should be a verdict against him, the judgment might be arrested on account of the insufficiency of the allegations or the imperfections and errors of the indictment. 1 Chit. Crim. Law, 169, 661. It is within the province of the jury to determine the issue between the Commonwealth and the defendant, and they are accordingly sworn only to the faithful performance of that duty. Rev. Sts. *c.* 137, § 7. But the court must decide upon the face of the record of what crime or offence he is accused, in order that it may be known in advance for what he is put upon trial, or for what in the end, if he is found guilty, he may be punished. *Remon* v. *Hayward,* 2 Ad. & El. 666. The court therefore should not have left to the jury the question whether the words " as true " constituted a part of the third count, or had been stricken from it. If left to them, there is nothing, after a general verdict, on the face of the record, by which it can be determined whether those words are in or not in the indictment, and consequently nothing by which it can be determined with certainty of what the accused has been convicted. This objection is fatal to the verdict upon the third count. Upon examination of the whole record it is impossible anywhere to find whether the defendant was found guilty of simply passing the counterfeit bills, or of passing them " as true."

For the reasons above stated, the exceptions in relation to the second and fourth counts are overruled, and judgment is to be entered on the verdict; but as to the third the exceptions are sustained, the verdict is set aside and a new trial ordered. And for these purposes the case is

*Remitted to the court of common pleas.*